**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | |
|---|---|
| Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Veterinary Internet Company, LLC (a/k/a VetInternetCo.com or vic.pharmacy), <br><br> Defendant. | Civil Action No. 0:22-cv-02317-MGL <br><br> COMPLAINT AND JURY DEMAND |

**COMPLAINT**

NOW COMES Nutramax Laboratories, Inc. ("Nutramax Labs") and Nutramax Laboratories Veterinary Sciences, Inc. ("Nutramax") (individually a "Plaintiff" and collectively "Plaintiffs"), by and through their undersigned counsel, and for their Complaint against Defendant Veterinary Internet Company, LLC (a/k/a VetInternetCo.com or vic.pharmacy, ("Defendant") states as follows:

**THE PARTIES**

1. Nutramax Labs is a South Carolina corporation with its principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720.

2. Nutramax is a South Carolina corporation with its principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720.

3. Upon information and belief, Veterinary Internet Company, LLC (a/k/a VetInternetCo.com or vic.pharmacy), is an Alabama limited liability company having an address at 9542 Union Grove Road., Union Grove, AL 35175.

1

**JURISDICTION AND VENUE**

4. This Court has personal jurisdiction over Defendant because Defendant has transacted business in the State of South Carolina; committed tortious acts or omissions causing an injury in the State of South Carolina; and caused tortious injury in the State of South Carolina by an act or omission outside the State of South Carolina in connection with its regular business activities in the State of South Carolina. Additionally, Defendant has consented to the jurisdiction of this Court by virtue of a forum selection clause in the United States Authorized Direct Reseller Agreement (the "Agreement") that forms the basis of Plaintiff Nutramax's claims in this Complaint.

5. This Court has subject matter jurisdiction over Plaintiff Nutramax Labs' claim in Count I pursuant to 15 U.S.C. § 1121 (actions arising out of the Lanham Act); 28 U.S.C. § 1331 (federal jurisdiction); and 28 U.S.C. § 1338 (general jurisdiction for trademark actions). This Court has supplemental jurisdiction over the remaining claim in Count II under 28 U.S.C. § 1367 because that claim is so related to the federal claim asserted in Count I that they form part of the same case or controversy.

6. This Court further has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs, citizens of South Carolina, on the one hand, and the Defendant, a citizen of Alabama, on the other, and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

7. Venue in this District is proper pursuant to 28 U.S.C. § 1391, and particularly in this division under Local Civ. Rule 3.01(A) because a substantial part of the events and activities giving rise to the claims occurred in the District of South Carolina and because a portion of Plaintiff

Nutramax's claims arise under the Agreement, which contains a forum selection clause requiring claims to be filed in Lancaster County, South Carolina, which is in this Division.

## GENERAL ALLEGATIONS

8. Nutramax is a company dedicated to the research and development of the highest quality products in the nature of supplements to support health and wellness. Nutramax is proud to be the industry leader in setting and adhering to strict standards for manufacturing and quality in the field of supplements.

9. Nutramax Labs owns certain intellectual property, including several federally registered trademarks, including but not limited to United States Registration Nos.: 4,654,181 for NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC. and design; 1,791,253 and 5,662,197 for COSEQUIN; and 3,266,390 for DASUQUIN (collectively, the "Nutramax Marks"), which are licensed for use by Nutramax.

10. Nutramax offers a wide array of supplements, including for dogs, cats, and horses. These supplements support joint health, digestive health, skin and coat health, and provide other helpful benefits to such animals.

11. Nutramax firmly believes that its supplements should be backed by scientific research. Nutramax's commitment to research is evident from, among other things, a state-of-the art research facility.

12. To ensure it is offering safe and effective supplements, Nutramax regularly conducts research and/or studies on its own products. Many of these studies have been published and/or presented in medical, veterinary, and other health-related journals and publications. Nutramax also conducts studies relating to efficacy, bioavailability, and safety.

13. In addition to the cutting-edge research and development of Nutramax, Nutramax Labs has been successful in obtaining intellectual property protection related to its supplements, including a large portfolio of domestic and foreign patents.

14. Due to the considerable resources dedicated to development and research, supplements bearing the Nutramax brand are widely regarded as the gold standard in the industry.

15. Supplements offered under the Nutramax Marks are highly renowned, and Plaintiffs collectively have invested many millions of dollars and have expended significant time and effort in advertising, promoting, and developing their trademarks, including the Nutramax Marks, throughout the United States. Such advertising and promotion have established substantial goodwill and widespread recognition in the Nutramax Marks, by both customers and potential customers, as well as the public at large. The end result of this considerable advertising expenditure, promotion, and goodwill is that both the Nutramax brand and the Nutramax Marks have achieved substantial fame among consumers.

16. To create and maintain such goodwill, Nutramax has taken substantial steps to ensure that products bearing its trademarks, including the Nutramax Marks, are of the highest quality and, thus, such trademarks are recognized in the United States as symbols of the highest quality products.

17. On August 17, 2015, Nutramax and Defendant entered into the United States Authorized Direct Reseller Agreement (the "Agreement") describing the rights and obligations of Defendant and Nutramax with respect to the appointment of Defendant as an authorized reseller of certain Nutramax Products (the "Product(s)") as defined therein and listed on Schedule A of the Agreement.

18. Under Section 5 of the Agreement, Nutramax granted Defendant a limited, non-exclusive, non-assignable, non-sublicensable, non-transferable, revocable license to use the "Licensed IP" (defined in the Agreement as "trademarks, tradenames, product images, and/or marketing banners provided by Nutramax") ("Licensed IP"), for the sole purpose of advertising and promoting the sale of Products within the United States of America to "End-Users" (defined in the Agreement as "any purchaser of the Product(s) from [Nutramax] who is the ultimate consumer for whom the Product is designed and who does not intend to resell the Product to a third party") ("End-Users") subject to certain restrictions and limitations described therein.

19. Under Section 5 of the Agreement, Defendant agreed to "not use the Licensed IP in a manner that disparages Nutramax or the Products, blurs, dilutes or otherwise diminishes the Licensed IP, or portrays Nutramax or the Products in a false, competitively adverse or poor light."

20. Further under Section 7(c) of the Agreement, Defendant agreed that it shall "maintain and stock: (i) an adequate supply of the Products to satisfy the demand of its customers and (ii) a representative sample of all Products."

21. Additionally, under Section 7(f) of the Agreement, Defendant agreed that it shall "not adulterate, mislabel or tamper with any Product."

22. Pursuant to Section 9, the Agreement could be terminated by Nutramax immediately upon written notice to Defendant in the event of a breach by Defendant of Sections 1, 2, 3, 4, 5, or 7 of the Agreement; or by Nutramax or Defendant, without cause or liability, upon thirty (30) days' prior written notice to the other party.

23. Pursuant to Section 24 of the Agreement, Nutramax has the right to seek immediate injunctive relief against Defendant for any breach of the Agreement without having to provide notice to Defendant or having to post a bond.

24. At all times relevant hereto, Nutramax has complied with its obligations under the Agreement.

25. On or around April 2022, Plaintiffs learned that Defendant sold Products that had been modified in breach of at least Section 7(f) of the Agreement. Specifically, Defendant sold Product bearing a label from which the lot number and expiration date of the Product had been removed by Defendant.

26. On or around April 2022, Plaintiffs further learned that Defendant did not maintain and stock adequate supply of certain Products in breach of Section 7(c) of the Agreement. Specifically, Defendant listed numerous Products as "out of stock" or "backordered" on its website, although supply of those Products was available to Defendant from Nutramax.

27. On May 5, 2022, upon learning of Defendant's breaches, a representative of Nutramax sent Defendant a letter providing Defendant with written notice that Nutramax was terminating the Agreement effective immediately pursuant to Section 9(a) of the Agreement, and prohibiting Defendant from any further sales of Products. A true and accurate copy of the May 5, 2022 letter, including all exhibits, is attached hereto as Exhibit A.

28. On information and belief, Defendant has also shipped Nutramax Products to consumers in damaged packaging.

## COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1125)

29. Plaintiff Nutramax Labs restates and re-alleges the preceding paragraphs as if fully set forth in this Count.

30. As described above, Nutramax Labs is the owner of the Licensed IP described in the Agreement and the famous Nutramax Marks, which are licensed for use by Nutramax.

31. Under the Agreement, Nutramax granted Defendant a limited license to use the Licensed IP, including the Nutramax Marks owned by Nutramax Labs, for the sole purpose of advertising and promoting the sale of Products within the United States of America to End-Users, subject to restrictions and limitations described in the Agreement.

32. Defendant's activities described above, including Defendant's act of removing the expiration date and lot number from the Product and selling the Product without that information, such reflecting a willful violation of the Lanham Act, 15 U.S.C. § 1125, were unauthorized by Plaintiff Nutramax Labs and the terms of the Agreement due to the modification of the Product's condition, which was materially different from that authorized for distribution.

33. Defendant's unauthorized activities and its use of the Nutramax Marks took place in interstate commerce.

34. Defendant's activities and use of the Nutramax Marks are likely to cause injury to Plaintiff Nutramax Labs.

35. Defendant's unauthorized activities constitute willful violations of the Lanham Act, 15 U.S.C. § 1125.

36. As a direct and proximate result of Defendant's unauthorized and unlawful acts, Plaintiff Nutramax Labs has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial, but are alleged to include without limitation Nutramax Labs' attorneys' fees and costs incurred in connection with of this lawsuit.

## **COUNT II – BREACH OF CONTRACT**

37. Plaintiff Nutramax restates and re-alleges the preceding paragraphs as if fully set forth in this Count.

38. As stated above, on August 17, 2015, Nutramax and Defendant entered into the Agreement for Defendant's appointment as an authorized reseller of the Products.

39. The Agreement, including all schedules attached thereto, is a valid and enforceable contract governed by the law of the State of South Carolina.

40. Under the Agreement, Nutramax granted Defendant a limited license to the Licensed IP, including the Nutramax Marks, in connection with certain Products and subject to certain restrictions and limitations specified therein.

41. Under the Agreement, Defendant agreed to undertake certain obligations with respect to advertising, displaying, promoting, and selling the Products. Specifically, under the Agreement, Defendant agreed to "maintain and stock: (i) an adequate supply of the Products to satisfy the demand of its customers and (ii) a representative sample of all Products;" and "not adulterate, mislabel or tamper with any Product."

42. Further, under the Agreement, Defendant agreed to not use the Licensed IP in a manner that disparages Nutramax or the Nutramax Products, blurs, dilutes or otherwise diminishes the Licensed IP, or portrays Nutramax or the Products in a false, competitively adverse or poor light.

43. As described above, in breach of Defendant's obligations under the Agreement, Defendant sold Product with a label that had been modified by the removal of the lot number and expiration date of the Product. *See* "Exhibit A" to Exhibit A attached hereto.

44. Defendant also breached its obligations under the Agreement by failing to maintain and stock adequate supply of certain Products, although supply of those Products was available to Defendant, and by shipping Product bearing the Licensed IP and Nutramax Marks in damaged packaging.

45. Defendant's activities constitute a material breach of the Agreement.

46. Defendant's breach of its obligations has directly harmed Nutramax in amounts to be proven at trial, but are alleged to include without limitation actual damages, liquidated damages, damage to Nutramax's business and its goodwill and reputation, disgorgement, and, pursuant to Section 18 of the Agreement, Nutramax's attorneys' fees and costs incurred in connection with of this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendant as follows:

1. Judgment against Defendant under Counts I and II in an amount in excess of $75,000.00, the exact amount to be determined at trial;

2. Enjoining Defendant from further advertising, promoting, displaying, or selling Nutramax Products, or using the Licensed IP or Nutramax Marks in connection with the same;

3. Disgorgement of Defendant's profits;

4. Plaintiffs' lost sales;

5. Attorney's fees, interest, and costs;

6. Awarding Plaintiffs both pre-judgment and post-judgment interest on each and every damage award; and

7. All other relief as the Court may deem just and equitable.

## JURY DEMAND

Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. hereby request a trial by jury on all issues and claims so triable.

July 19, 2022

        Respectfully submitted,

        **HAYNSWORTH SINKLER BOYD, P.A.**

        By:  s/Steve A. Matthews
             Steve A. Matthews
             Federal ID No. 5119
             smatthews@hsblawfirm.com
1201 Main Street  (29201-3226)
P.O. Box 11889  (29211-1889)
Columbia, South Carolina
803.540.7827 (Telephone)
803.765.1243 (Facsimile)

Andrew D. Dorisio (*pro hac vice* motion to be submitted)
C. Anne Stewart (*pro hac vice* motion to be submitted)
**DICKINSON WRIGHT PLLC**
300 W. Vine Street, Suite 1700
Lexington, KY 40507
T: 859-899-8700
F: 844-670-6009
E-mail: adorisio@dickinsonwright.com
       astewart@dickinsonwright.com

*Counsel for Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*

10